**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | Case No. 23-11114 MER |
| Brian John Phillips and Amanda Elizabeth Phillips | Chapter 7 |
| Debtors. | |
| Attorneys Title Guaranty Fund, Inc. | Adversary No. 23-01157 MER |
| Plaintiff, | |
| v. | |
| Brian John Phillips | |
| Defendant. | |

**ORDER RE: PLAINTIFF'S COMPLAINT**

This matter comes before the Court following a trial on Plaintiff Attorneys Title Guaranty Fund, Inc.'s ("**ATGF**") Complaint.  At issue is whether a state court judgment ATGF obtained against Debtor/Defendant Brian Phillips ("**Phillips**") is excepted from Phillips' discharge pursuant to 11 U.S.C. § 523(a)(6).

**BACKGROUND**

ATGF is a title insurance underwriting company.  Phillips joined ATGF as its vice president and general counsel in February 2017.  He was promoted to CEO in May 2018 and remained ATGF's CEO until June 2020.  In or around December 2018, Phillips learned that Title One, a national title and escrow company, was interested in selling its business to ATGF.  Phillips felt the acquisition would be a good opportunity for ATGF to expand its business and generate additional revenue.  As such, Phillips discussed ATGF acquiring Title One with ATGF's chairman of the board, Maurizio Romanin ("**Romanin**").  Phillips and Romanin discussed the Title One purchase for several months.  However, Phillips believed that Romanin wasn't interested in purchasing Title One, and that any hope for a deal between the two companies was dead.  Eventually, Phillips, along with his wife and another ATGF employee, Devin Storms ("**Storms**"), personally purchased Title One.  Phillips became Title One's CEO while he was still ATGF's CEO.  Romanin didn't become aware that Phillips had purchased Title One or was its CEO until after Phillips left ATGF.

1

While Phillips was ATGF's CEO, issues arose regarding the use of ATGF's proprietary underwriting software, EPIC. ATGF's agents are all required to use EPIC; however, a majority of them do not like using it.  In an effort to address this issue, Phillips implemented Agent Plus/the KSS Initiative.  Through the KSS Initiative, ATGF's agents would enter underwriting information into the software of their choice, and KSS, a third-party company located in India, would enter the data from the agent's chosen software into EPIC that night.  However, ATGF encountered several problems with the KSS Initiative, including a COVID-19 pandemic-related backlog of data to be entered into EPIC.  Disputes also arose about whether Phillips was making accurate representations to ATGF's board and other regulatory agencies regarding the timeliness of the data entry into EPIC.

In April of 2020, Phillips decided to leave ATGF for one of its competitors, First National Title Insurance Company ("**FNTIC**").  While discussing his own job opportunity with FNTIC, Phillips identified two of ATGF's employees, Storms and Kim Whitlock ("**Whitlock**"), as potential employees to bring over to FNTIC.  For several months, Phillips facilitated conversations between himself, FNTIC, Storms, and Whitlock regarding salary, commissions, and other potential opportunities.  On June 4, 2020, Phillips sent an email to FNTIC stating that he, Storms, and Whitlock accepted FNTIC's offers of employment and could start working at FNTIC in late June or possibly sooner.  Phillips, Storms, and Whitlock all left ATGF around the same time and began working at FNTIC.

Following Phillips' departure, ATGF commenced litigation against him in the Denver County District Court ("**State Court**"), asserting a single claim for breach of fiduciary duty ("**State Court Case**").[1]  Before the State Court Case could proceed to trial, Phillips filed the underlying bankruptcy case, and ATGF commenced the instant adversary proceeding pursuant to § 523(a)(4) and (a)(6).  Phillips filed a counterclaim for defamation.  On September 28, 2023, Phillips filed a Motion to Stay Proceedings Under Doctrine of Discretionary Abstention ("**Motion to Stay**"), which ATGF opposed.  Following a hearing on the matter, the Court granted the Motion to Stay.  The parties returned to State Court, and a jury trial was held.  The jury considered ATGF's claim for breach of fiduciary duty based on three different alleged breaches: (1) Phillips' inducing ATGF employees to leave ATGF for a competitor; (2) Phillips usurping ATGF's opportunity to purchase Title One and operating Title One in conflict with ATGF's interests; and (3) Phillips' lying to ATGF executives about the use of EPIC by ATGF's agents.  Following the trial, the jury returned a verdict in ATGF's favor and awarded it damages ("**Jury Verdict**").  Phillip's counterclaim for defamation was also resolved at trial via a motion for a directed verdict, which was granted in favor of ATGF.  The State Court entered judgment in accordance with the Jury Verdict on October 11, 2024 ("**State Court Judgment**").  The parties then returned to this Court to determine whether the State Court Judgment is excepted from Phillips' discharge.  On April 2, 2025, ATGF filed a motion for summary judgment.  Phillips filed a response and cross-motion for summary judgment.  On August 22, 2025, the Court entered an order

---

[1] District Court, Denver County, Colorado Case No. 2021CV30630.

granting the motion for summary judgment in part and denying it in part.[2]  In particular, the Court found that the Jury Verdict and State Court Judgment had a preclusive effect on the issues of causation and damages because the jury found that ATGF was injured and that Phillips caused the injury.  However, the Court determined issues regarding Phillip's intent had not been resolved in the State Court Case, and that they needed to be resolved at trial in this proceeding.[3]  Prior to trial, the parties submitted joint testimony designations from the State Court trial transcripts, as well as exhibits.[4]  The Court conducted a trial on ATGF's complaint on January 8, 2026.  At the trial, the Court admitted several exhibits and heard testimony from Phillips.

## ANALYSIS

### A.     Intent Under 11 U.S.C. § 523(a)(6)

The only issue before the Court is whether Phillips had the requisite intent to find the State Court Judgment nondischargeable under § 523(a)(6).  A claim under § 523(a)(6) requires a showing of an intentional act by the defendant that was done with the intent to harm.[5]  In other words, Phillips' conduct must have been both "willful" and "malicious."  Willfulness "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[6]  Courts have recognized two ways of establishing willful conduct.  The debtor must either "desire to cause the consequences of his act or believe the consequences are substantially certain to result from it."[7]  The latter "substantial certainty" test is not an objective test.[8]  Instead, willfulness under both standards is a wholly subjective test dependent on the debtor's state of mind.[9]  The second element refers to proof of a malicious injury, distinct from willfulness.  Malicious injury requires evidence of the debtor's motives.  To be malicious, the debtor must have "acted with a culpable state of mind vis-à-vis the actual injury caused to the creditor."[10]

---

[2] The Court also denied Phillips' cross motion for summary judgment.

[3] At the time ATGF filed its motion for summary judgment, it also maintained a claim pursuant to 11 U.S.C. § 523(a)(4), which was not addressed in its summary judgment motion. As such, the Court also found that the § 523(a)(4) claim would be decided at trial. However, ATGF withdrew its § 523(a)(4) claim prior to trial. Therefore, the only claim addressed at trial was the § 523(a)(6) claim.

[4] ECF No. 67.

[5] *Trans-West, Inc. v. Mullins (In re Mullins)*, 2021 WL 2679137, at *6 (10th Cir. BAP June 30, 2021) (*citing Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002)).

[6] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[7]  *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (internal quotation omitted).

[8] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 913 (10th Cir. BAP 2020); *Via Christi Reg. Med. Center v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. Sept. 8, 2000).

[9] *In re Smith*, 618 B.R. at 913.

[10] *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at *7 (10th Cir. July 12, 2022) (citing *In re Smith*, 618 B.R. at 919).

The debtor's action must be "wrongful and without just cause or excuse."[11] An act may be malicious if taken "in conscious disregard of one's duties and without just cause or excuse, even in the absence of personal hatred, spite or ill-will."[12] "[A]ll the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind."[13] Here, ATGF argues that Phillips' usurpation of the opportunity to purchase Title One, solicitation of ATGF employees to FNTIC, and representations regarding EPIC all constitute willful and malicious conduct.

### 1. Phillip's Usurpation of the Title One Purchase

The first instance the Court will review is Phillips' personal purchase of Title One. ATGF asserts that Phillips knew or was substantially certain that ATGF would be injured by his usurpation of the Title One opportunity. In particular, ATGF contends Phillips knew that purchasing Title One presented an opportunity for ATGF to generate new revenue. However, Phillips deprived ATGF of that opportunity by purchasing it for himself. Further, Phillips, as ATGF's CEO, understood that part of his duty of loyalty to ATGF included not competing against it. Despite this fact, Phillips still purchased Title One and became its CEO. Phillips disagrees with ATGF's analysis of the situation. Instead, Phillips argues that he repeatedly tried to persuade Romanin to have ATGF purchase Title One, however, Romanin made it clear he was not interested and told Phillips never to bring it up again. As such, Phillips believed that ATGF had no desire to purchase Title One. Phillips further asserts that even if he misunderstood Romanin's intentions in purchasing Title One, any misunderstanding was an honest mistake, and that he never intended to injure ATGF by purchasing it personally.

The Bankruptcy Court for the Western District of Michigan addressed a similar situation in the case, *In re Sullivan* ("**Sullivan**"). In *Sullivan*, the debtor/defendant was the president of plaintiff Digital Commerce Limited ("**Digital Commerce**").[14] While he was president, the debtor contacted a potential new client for Digital Commerce, ASR Corporation ("**ASR**"). While the debtor was soliciting ASR's business for Digital Commerce, he was also investigating employment opportunities with ASR for himself. After several months of communication, the debtor decided to stop pursuing ASR as a client for Digital Commerce. Instead, the debtor started his own company, Sullivan & Pliml ("**S&P**"). After forming S&P, the debtor reached out to ASR as a potential client. The debtor contacted ASR on behalf of S&P while he was still Digital Commerce's president. S&P worked for ASR for about a year and earned hundreds of thousands of

---

[11] *In re Smith*, 618 B.R. at 919.

[12] *Id*.; *see In re Tsamasfyros*, 940 F.3d 605, 607 (10th Cir. BAP 1991) (finding state court judgment for breach of fiduciary duty should be given preclusive effect for purposes of 11 U.S.C. § 523(a)(2)(A) because the state court judgment contained findings the breach was attended by fraud and recklessness).

[13] *Id*. (citing *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993)).

[14] *In re Sullivan*, 305 B.R. 809, 814 (Bankr. W.D. Mich. 2004).

dollars.  Meanwhile, Digital Commerce became financially crippled and was forced to sell its entire book of business to a competitor.  A few years later, the debtor filed for bankruptcy.  Digital Commerce initiated an adversary proceeding wherein it asserted that the debtor breached his fiduciary duty by usurping the opportunity to bring ASR on as a client for himself.  Digital Commerce further asserted that any debt the bankruptcy court found owed by the debtor for breach of fiduciary duty was nondischargeable under § 523(a)(2)(A), (a)(4), and/or (a)(6).  The court in *Sullivan* found that the debtor had breached his fiduciary duty by diverting the opportunity to gain ASR as a client from Digital Commerce and taking  it for S&P.[15]  The court went on to say that although there was little, if any, direct evidence that the debtor's misappropriation of the ASR opportunity was motivated by an intent to harm Digital Commerce, his usurpation of the opportunity was still "willful" because he knew that his actions would harm Digital Commerce.[16]  The court further found the debtor's concealment of S&P and its relationship with ASR confirmed he knew his actions were likely to be harmful to Digital Commerce.[17]  The debtor's actions were also found to be malicious because they were taken with blatant disregard for the duty of loyalty he owed to Digital Commerce as its president.[18]  As a result, the court in *Sullivan* found the debt owed by the debtor to Digital Commerce for the usurpation of the ASR opportunity was nondischargeable under § 523(a)(6).[19]

The facts in this proceeding are substantially similar to those in *Sullivan*.  At all relevant times, Phillips was ATGF's CEO.[20]  As CEO, Phillips owed ATGF a duty of loyalty.[21]  In December of 2018, ATGF had the opportunity to purchase Title One.[22]  Phillips knew that purchasing Title One would be a good opportunity for ATGF to earn additional profit and increase its revenue.[23]  Phillips testified that he brought the

---

[15] *Id.* at 821 ("The Debtor diverted the opportunity to prepare a needs analysis for ASR away from Digital Commerce, kept the opportunity for himself and then transferred it to his new company, Sullivan & Pliml.  Digital Commerce has a valid claim against the Debtor for usurping a corporate opportunity in violation of his fiduciary duty of good faith.").

[16] *Id.* at 822-23 ("In the present adversary proceeding, there is little, if any, direct evidence to suggest that the Debtor's misappropriation of the ASR opportunity was motivated by an intent to harm Digital Commerce . . . . Still, under the Sixth Circuit's definition, the Debtor's usurpation of the ASR opportunity is considered 'willful' if he knew that the consequences of his actions were substantially certain to occur . . . . [The Debtor] knew the lost opportunity would inevitably cause Digital Commerce financial harm.").

[17] *Id.* at 823.

[18] *Id.*

[19] *Id.*

[20] ECF No. 69, Joint Pre-Trial Statement, at 5.

[21] *Id.*

[22] ECF No. 74, Transcript of Trial in Adversary Proceeding, at 78:16-25, 79:1-7, 123:9-14.

[23] *Id.* at 80:6-16.

opportunity to Romanin for consideration, but Romanin never expressed interest.[24]  This conflicts with Romanin's testimony that he was interested in having ATGF purchase Title One and wanted to structure a deal to ATGF's advantage.[25]  Regardless of whether or not Phillips misunderstood Romanin's intentions in purchasing Title One, it is clear that he was contemplating purchasing it for himself at the same time he was trying to persuade ATGF to purchase it.  Indeed, on December 18, 2018, shortly after Phillips learned of the opportunity, he sent an email to Title One in which he stated that he and Storms had "kicked around" the idea of purchasing Title One themselves.[26]  Eventually, Phillips did purchase Title One and became its CEO.[27]  Phillips' purchase of Title One deprived ATGF of the opportunity to purchase it.[28]  Phillips concealed his purchase of Title One from ATGF and Romanin until he left in 2020.[29]

Given the above testimony, the Court concludes that Phillips' usurpation of ATGF's opportunity to purchase Title One constitutes willful and malicious conduct.  Phillips' conduct was willful because even if he did not intend to harm ATGF, he knew that purchasing Title One for himself would deprive ATGF of the opportunity.  As in *Sullivan*, the fact that Phillips concealed his purchase of Title One from Romanin confirms he knew his actions were harmful.  Further, Phillips' purchase of Title One is malicious because it was done in blatant disregard of the duty of loyalty he knew he owed to ATGF.  Because Phillips' usurpation of the opportunity to purchase Title One was willful and malicious, the State Court Judgment is nondischargeable under § 523(a)(6).

### 2.    Solicitation of ATGF Employees

ATGF also asserts that Phillips' solicitation of ATGF employees to FNTIC constitutes willful and malicious conduct.  Indeed, ATGF argues Phillips knew and intended that his recruitment of Storms for FNTIC would harm ATGF because Storms generated substantial revenue for ATGF.  ATGF also contends that Phillips intended for other employees to follow him, Storms, and Whitlock to FNTIC because many of ATGF's agents were loyal to them.

A similar issue came before the Tenth Circuit Bankruptcy Appellate Panel in *First American Title Insurance Co. et.al. v. Smith* ("**Smith**").[30]  In *Smith* the debtor/defendant was legal counsel for plaintiffs First American Title Insurance Company and First American Title Company, LLC (collectively, "**FATIC**").  At some point, the debtor was

---

[24] *Id.* at 80:20-25, 81:1-4.

[25] ECF No. 67, Transcript of State Court Trial Day 2 in Case No. 2021CV30630, at 33:8-14.

[26] Trial Ex. 5; ECF No. 77, Ex. L.

[27] ECF No. 74, at 97:10-14.

[28] ECF No. 67, Transcript of State Court Trial Day 1 at 229:13-15.

[29] ECF No. 74. at 179:7-13.

[30] *First American Title Ins. Co. et. al v. Smith (In re Smith)*, 618 B.R. 901 (10th Cir. BAP 2020).

approached by several other employees about opening a business to compete with FATIC, which the debtor would run.  The debtor agreed and set up his competing business, Northwest Title ("**Northwest**"), while he was still FATIC's legal counsel.  Once Northwest was set up, the debtor resigned from FATIC and hired twenty-seven of FATIC's employees for Northwest.  FATIC then sued the debtor in state court on several claims, including breach of fiduciary duty.  Following a trial, the jury found, among other things, the debtor breached the fiduciary duty he owed to FATIC as its attorney.  FATIC was awarded a judgment, and the debtor soon filed for bankruptcy.  FATIC then initiated an adversary proceeding, asserting the state court judgment was nondischargeable pursuant to § 523(a)(6).  The court in *Smith* found that the debtor had acted with willful intent when he (1) formed Northwest to compete with FATIC; and (2) hired many of FATIC's employees.[31]  The court concluded that the debtor did these acts with the subjective knowledge that they were substantially certain to result in the particularized harm suffered by FATIC.[32]  The debtor disagreed with the court's findings and argued, among other things, that any harm FATIC suffered wasn't intentional, but instead was the result of the "risks inherent in conducting business in the free market."[33]  The court rejected this argument, finding that the debtor wasn't just a market competitor but a former FATIC employee who took 27 long-term employees to start a competing business.[34]  The court also found that the debtor's conduct was malicious for several reasons, including that forming Northwest was well beyond what was necessary for the debtor to better his employment, and that he subjectively knew his actions were substantially certain to cause harm to FATIC.[35]  Ultimately, the Bankruptcy Appellate Panel affirmed the bankruptcy court's decision finding the debt owed to FATIC was nondischargeable under § 523(a)(6).[36]

The facts here are similar to those in *Smith*.  FNTIC is ATGF's competitor.[37]  Phillips was ATGF's CEO when he was approached by and began communicating with FNTIC.[38]  Phillips told FNTIC that he believed he could bring several of ATGF's higher-volume agents with him because  many of the agents were loyal to him, Storms, and Whitlock.[39]  Phillips eventually accepted employment offers from FNTIC for himself and on behalf of Storms and Whitlock.[40]  When Phillips left ATGF, he took Storms and

---

[31] *Id.* at 912.

[32] *Id.*

[33] *Id.* at 913.

[34] *Id.*

[35] *Id.* at 920-21.

[36] *Id.* 923.

[37] ECF No. 74, Trial Tran. at 36:7-9.

[38] *Id.* at 48:2-10.

[39] ECF No. 77, Ex. B, April 15, 2020, Email from Phillips to George Stablein, an FNTIC employee.

[40] *Id.*, Ex. C, June 4, 2020, Email from Phillips to George Stablein.

Whitlock with him, who together accounted for roughly 20% of the company, and intended for more of ATGF's higher-volume agents to follow.[41]

Phillips argues he didn't intend to harm ATGF by going to FNTIC, and that he only left because he felt FNTIC was a better opportunity for him.  He also argues Storms and Whitlock left not because he induced them to do so, but because they also believed FNTIC was a better opportunity.  The Court is unpersuaded by these arguments.  Like in *Smith*, Phillips wasn't just a regular employee seeking a better opportunity.  Rather, Phillips was ATGF's CEO, left for a competitor, took two employees with him, and intended for more to follow.  One of the employees Phillips took with him, Storms, was one of ATGF's most successful agents.[42]  Phillips was aware of the revenue Storms created for ATGF, and understood that Storms' leaving ATGF meant that ATGF would no longer see that revenue.[43]  Despite this, Phillips negotiated with FNTIC on behalf of Storms and Whitlock and told FNTIC what it would need to offer to  persuade them to leave ATGF.[44]  This conduct is exactly the type of "willful" conduct that falls within § 523(a)(6) because Phillips did it while subjectively knowing that his actions were substantially certain to cause the particularized harm ATGF suffered.  Indeed, Romanin testified that Phillips' conduct caused ATGF to lose sixty-percent of its business in Utah, 40% of its business in Colorado, and over $85,000 in revenue.[45]  Phillips testified he understood this is the kind of harm ATGF would suffer if ATGF's employees, including Storms, left ATGF.[46]  This conduct is also "malicious" because, like in *Smith*, Phillips' actions went far beyond what was necessary to better his employment; he knew his actions were substantially certain to cause harm to ATGF, and he took those actions in blatant disregard for the duty of loyalty he owed ATGF as its CEO.  Because this conduct meets both the "willful" and "malicious" elements, the State Court Judgment is nondischargeable under § 523(a)(6).[47]

---

[41] ECF No. 67, State Court Trial Tran. Day 1, 232:11-14, 233:3-5.

[42] ECF No. 74, 16:15-17; 73:2-4; ECF No. 77.

[43] *Id.*, 168:11-17; 169:16-25; ECF No. 67, State Court Trial Tran. Day 3, 283:15-17.

[44] *Id.*, 66:5-10; ECF No. 77, Ex. F, May 30, 2020, Email Between Storms and Phillips regarding FNTIC's offer; ECF No. 67, State Court Trial Tran. Day 1, 35:18-19.

[45] ECF No. 67, State Court Trial Tran. Day 1, 241:18-22; ECF No. 67, State Court Trial Tran. Day 3, 125:14-25, 126:1.

[46] ECF No. 74, 168:11-17; 169:16-25.

[47] Because the Court already found Phillips' conduct surrounding his usurpation of the Title One opportunity and solicitation of ATGF's employees is willful and malicious, the Court need not address Phillips' conduct regarding the KSS Initiative/EPIC.

**B.      Amount of ATGF's Nondischargeable Claim**

As the Court previously discussed, it already found that ATGF suffered damages as a result of Phillips' conduct.[48]  The jury in the State Court Case awarded ATGF $105,312.50 for the State Court Judgment.  Neither party disputes this amount, nor can the Court collaterally attack the amount of the State Court Judgment.[49]  ATGF also requests the Court award it costs in the amount of $19,897.15.  Courts have generally held that fees and costs awarded as part of a state court judgment that is deemed nondischargeable are also excepted from discharge.[50]  Here, the State Court awarded ATGF costs as part of the State Court Judgment.[51]  Therefore, ATGF's costs are also nondischargeable.  As such, the total amount of ATGF's claim that is excepted from Phillips' discharge is $125,209.65.

**CONCLUSION**

For the reasons stated above,

THE COURT ORDERS the State Court Judgment is excepted from Phillips' discharge pursuant to 11 U.S.C. § 523(a)(6).  The Court will enter a separate non-dischargeable judgment in favor of ATGF in the amount of $125,209.65, plus applicable post-judgment interest.

THE COURT FURTHER ORDERS pursuant to Fed. R. Civ. P. 54(b) (incorporated by Fed. R. Bankr. P. 7054) all claims in this proceeding have been adjudicated, this order is final, and there is no just reason for delay.

Dated June 2, 2026                                    BY THE COURT:

                                                      _____
                                                      Michael E. Romero, Judge
                                                      United States Bankruptcy Court

---

[48] ECF No. 57.

[49] *In re Smith*, 321 B.R. 542, 550 (Bankr. D. Colo. 2005) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

[50] *NF Clean, Prestacao De Servicos v. Kakal (In re Kakal)*, 596 B.R. 335, 338-39 (Bankr. S.D. Tex. 2019) ("When a bankruptcy court concludes that a particular judgment debt is non-dischargeable, attorney's fees awarded by the state court under an enforceable contract or state statute in connection with that non-dischargeable debt will also be deemed non-dischargeable."); *In re Taylor*, 256 B.R. 294, 296 (Bankr. M.D. Fla. 2001) (finding bankruptcy court had no authority to reconsider or amend amount of costs awarded as part of a state court judgment.).

[51] ECF No. 69.